**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

|  |  |
|---|---|
| Jacki D., <br><br>                 *Plaintiff*, <br><br>        *v.* <br><br> Frank J. Bisignano, <br> Commissioner of Social Security, <br><br>                 *Defendant*. | Case No. 3:25-cv-50039 <br><br> Honorable Michael F. Iasparro |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jacki D. brings this action under 42 U.S.C. § 405(g) seeking reversal of the decision denying her applications for disability insurance benefits and supplemental security income.[1] For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded.

**BACKGROUND**

Plaintiff filed applications for disability insurance benefits and supplemental security income alleging a disability onset date of January 1, 2021. R. 201, 208. Following a hearing, an Administrative Law Judge ("ALJ") issued an unfavorable decision on May 22, 2024, finding that Plaintiff is not disabled. R. 15-30. The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform medium work with the following limitations:

> The claimant can frequently reach overhead to the left, and she can frequently reach for all other reaching. The claimant can frequently climb ramps and stairs, and occasionally climb ladders, ropes, and scaffolds. The claimant can occ [sic] stoop, kneel, crouch, and crawl. The claimant can occasionally work at unprotected heights, work occasionally in extreme cold, and work occasionally in extreme heat.

R. 22. The ALJ found that Plaintiff could perform past relevant work and that there are other jobs that Plaintiff can perform that exist in significant numbers in the national economy. R. 28.

The Appeals Council denied Plaintiff's request for review on November 20, 2024, making the ALJ's decision the final decision of the Commissioner. R. 1-6; 20 C.F.R. § 404.900(a)(5). Plaintiff then filed this action seeking judicial review. Dkt. 1.

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). *See* Dkt. 8.

**STANDARD OF REVIEW**

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* The court's review of the Commissioner's findings is subject to "a very deferential standard." *Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025). When reviewing the ALJ's decision, the court's inquiry is limited to determining whether the ALJ's decision is supported by substantial evidence or resulted from an error of law. *Mandrell v. Kijakazi*, 25 F.4th 514, 515 (7th Cir. 2022). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (quoting *Biestek*, 587 U.S. at 103). The substantial evidence standard is satisfied when the ALJ provides "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell*, 97 F.4th at 1054 (internal quotation marks and citation omitted). To determine whether substantial evidence exists, the court reviews the record as a whole but "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Id.* at 1052–53; *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). Thus, "we will reverse an ALJ's decision only if the record compels a contrary result." *Thorlton*, 127 F.4th at 1081 (citation modified).

**DISCUSSION**

Plaintiff challenges the Commissioner's decision on five grounds: (1) Plaintiff's past relevant work is too remote; (2) the ALJ relied on unreliable vocational expert testimony to find significant jobs in the national economy; (3) the ALJ did not provide substantial evidence for her evaluation of the state agency medical consultants' opinions; (4) the ALJ's RFC determination lacked sufficient support; and (5) the ALJ improperly evaluated Plaintiff's subjective symptoms. Dkt. 17. The Commissioner asserts that Plaintiff's arguments largely ask for the Court to reweigh the evidence. Dkt. 22, at 12. However, as Plaintiff succinctly explained in her reply, she "does not ask this court to re-weigh the evidence but rather [argues] that the ALJ did not weigh the evidence in the first place." Dkt. 25, at 15. After reviewing the ALJ's decision "holistically," the Court agrees that the ALJ's analysis is insufficient to "build a 'logical bridge' from the evidence to her conclusion" as is required. *Chrisman on behalf of N.R.C. v. Bisignano*, 137 F.4th 618, 624 (7th Cir. 2025) (quoting *Warnell*, 97 F.4th at 1054).

1) RFC Determination

A claimant's RFC is "the most physical and mental work the claimant can do on a sustained basis despite her limitations." *Swiecichowski v. Dudek*, 133 F.4th 751, 755 (7th Cir. 2025) (quoting *Mandrell*, 25 F.4th at 516). When determining a claimant's RFC, regulations require that the ALJ consider seven strength functions – lifting, carrying, sitting, standing, walking, pushing, and pulling – and "describe 'how the evidence supports each conclusion'" with citations to the record. *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773-74 (7th Cir. 2022) (quoting *SSR 96-8p: Assessing RFC in Initial Claims*, 61 Fed. Reg. 34474, 34478 (July 2, 1996)). A failure to do so "is a sufficient basis, by itself, for [the Court] to reverse an ALJ's decision." *Id.* at 774.

2

Here, the ALJ failed to comply with this regulation. Although several of these strength functions were mentioned in the ALJ's summary of the record, the ALJ made no specific findings about any of them. While ALJs are not always required to discuss a function area when no limitation of that function has been alleged or is otherwise indicated in the record, this exception does not apply here because Plaintiff has alleged that she has some level of limitation in each of the seven functions. *See Jeske v. Saul*, 955 F.3d 583, 596 (7th Cir. 2020) ("[I]f the claimant has not alleged [] a limitation and the record lacks information indicating that one exists . . . we may conclude that the ALJ found no limitation in that function, without the ALJ stating so explicitly."). In fact, the ALJ recognized that Plaintiff "testified that she had significant limitations in sitting, standing, walking, and lifting." R. 26. Yet, the ALJ did not articulate her findings for any of the seven strength functions nor save this inadequacy with a "discussion show[ing] that the ALJ considered all strength-demand function limitations." *Jeske*, 955 F.3d at 596.

Of particular importance is the ALJ's lack of discussion about lifting and carrying as "that [is] the primary and relevant difference between light work and medium work" and the ALJ, contrary to all medical opinions in the record, found Plaintiff capable of medium work. *Jarnutowski*, 48 F.4th at 774-75 (remanding where the ALJ provided no explanation for her conclusion that the claimant could perform the physical requirements of medium work). The only evidence directly relating to Plaintiff's lifting ability is Plaintiff's testimony indicating that she can lift a gallon of milk with two hands, Dr. Aulex's opinion that Plaintiff can occasionally lift ten pounds but never lift twenty or more, and the state agency consultants' finding that Plaintiff can lift twenty pounds occasionally and ten pounds frequently. R. 57, 73, 95, 873. Each of these pieces of evidence would put Plaintiff squarely within the limits of light work (or potentially even sedentary based on Plaintiff's testimony). *See* 20 C.F.R. § 404.1567(a)-(b). The ALJ found the medical opinions of Dr. Aulex and the state agency consultants to be unpersuasive and she was not required to accept Plaintiff's testimony about her lifting abilities. *See Mueller v. O'Malley*, No. 23-cv-0076-jdp, 2024 WL 4262766, at *2 (W.D. Wis. Sept. 23, 2024). Even so, the ALJ was still required to provide some explanation for how the evidence supported finding that Plaintiff can perform medium work. *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("The ALJ needed to explain how she reached her conclusions about Scott's physical capabilities."). By failing to provide that explanation, the ALJ committed "a fatal error." *Allensworth v. Colvin*, 814 F.3d 831, 835 (7th Cir. 2016).

It is also unclear how the additional restrictions were crafted to account for Plaintiff's limitations. While there are no "magic words" that the ALJ was required to use in formulating the RFC, she was required to "incorporate all . . . limitations supported by the record." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021) (quoting *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019)). Here, Plaintiff's primary complaints from the hearing testimony were nausea and fatigue. R. 48-49, 51-52. Although a bit unclear, the ALJ seems to have at least partially credited Plaintiff's complaints of fatigue as she expressly described the RFC as "designed to address [Plaintiff's] fatigue." R. 26. But the ALJ's "decision offers no hint about how [s]he did so." *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012); *see also Moy v. Bisignano*, 142 F.4th 546, 554 (7th Cir. 2025) (remanding where "the ALJ's conclusion regarding Moy's limitations was not reflected in the conclusion he drew about Moy's ability to work"). Thus, without an explanation of how Plaintiff

could perform at the level assessed in the ALJ's RFC despite her fatigue, the Court "cannot conclude that the ALJ's decision was supported by substantial evidence." *Moy*, 142 F.4th at 555.[2]

The Commissioner is correct that it is Plaintiff's burden to present evidence to support her claim for disability. Dkt. 22, at 10. But once that evidence has been produced, it becomes the ALJ's duty to "adequately articulate her analysis so that [the Court] can follow her reasoning." *Jarnutowski*, 48 F.4th at 776 (quoting *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015)). Here, Plaintiff presented evidence of her lifting capabilities and her fatigue, but the ALJ failed to fulfill her duty as she provided no explanation for how Plaintiff could perform the exertional requirements of medium work or how the additional restrictions adequately accounted for Plaintiff's limitations. In some circumstances, such an error may be remedied by the ALJ's reliance on the narrative explanations provided in the medical opinions of record if those narratives provide the necessary explanation. *See DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019); *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015). However, as discussed below, the ALJ did not rely on any opinions related to Plaintiff's physical impairments as she found them all to be unpersuasive, a decision that was not supported with substantial evidence.

As one final matter related to the RFC, the Court notes that the ALJ's hypothetical to the vocational expert varied from the ALJ's ultimate RFC conclusion in two significant ways – the ALJ went from no right arm limitations in the hypothetical to only frequent reaching "for all other reaching" in her opinion and changed the frequency with which Plaintiff could stoop, kneel, crouch, and crawl from frequent to only occasional. R. 22, 64. While these changes may have been inadvertent, the Court cannot definitively say that is the case because the Court is unable to follow the ALJ's path of reasoning from the evidence to her assessed limitations. Because these more restrictive findings were excluded from the ALJ's hypothetical posed to the vocational expert, the vocational expert's testimony "necessarily is called into doubt, as is the ALJ's conclusion that [Plaintiff] is not disabled." *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018); *see also Crump*, 932 F.3d at 570.

2) Medical Opinion Evaluation

Further undermining the validity of the ALJ's RFC determination is her consideration of the state agency consultants' opinions. When evaluating medical opinions,[3] the ALJ was required

---

[2] The vocational expert testified that all of Plaintiff's past relevant work could be performed at the light exertional level meaning that an error in the ALJ's analysis of Plaintiff's exertional level may have been harmless. R. 29. However, because the ALJ insufficiently supported the remainder of her RFC findings as well, the Court cannot say with any certainty that the hypothetical posed to the vocational expert, which was based on that RFC, adequately accounted for *all* of Plaintiff's limitations (such as fatigue). *See Young v. Barnhart*, 362 F.3d 995, 1003-05 (7th Cir. 2004). Accordingly, the Court cannot determine whether the steps four and five determinations were in error. The Court will confirm though that SSR 24-2p should be used to evaluate Plaintiff's past relevant work on remand as the ruling expressly states that it will be applied to cases remanded for further administrative proceedings after the effective date. *SSR 24-2p: How We Evaluate Past Relevant Work*, 89 Fed. Reg. 48479, 48479 n.1 (June 6, 2024).

[3] The Court notes that prior administrative findings (which the state agency consultants' reports would be classified as) are distinct from medical opinions but, because they are evaluated under the same legal standard, the Court will use the general term of "medical opinion" to reference both. *See William J. L. v. Comm'r of Soc. Sec.*, No. 3:21-CV-338-MGG, 2023 WL 6388011, at *5 n.6 (N.D. Ind. Oct. 2, 2023).

to articulate her finding on the persuasiveness of each opinion and explain her consideration of the two most important factors in that evaluation – supportability and consistency. 20 C.F.R. § 404.1520c. The ALJ's analysis is evaluated under "a very deferential standard" and must be allowed "to stand so long as the ALJ minimally articulated [her] reasons." *Crowell v. Kijakazi*, 72 F.4th 810, 816 (7th Cir. 2023) (quoting *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008)). Nonetheless, the ALJ still must "articulate the grounds clearly and rationally for her decision." *Poole v. Kijakazi*, 28 F.4th 792, 796 (7th Cir. 2022).

Here, the ALJ found that the opinions of the state agency consultants[4] were not persuasive because "they appear to have relied heavily on the findings of the consultative examination in November 2022, which was just a year after [Plaintiff's] cancer diagnosis" and they were "not consistent with the evidence at the hearing level, including grossly normal physical examinations." R. 27. The ALJ also mentions that Plaintiff's fatigue has improved but it is unclear how this observation played into her analysis of the consultants' opinions as the consultants made no mention of fatigue beyond listing it as one of Plaintiff's alleged symptoms. R. 94.

The supportability factor looks at how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion." 20 C.F.R. § 404.1520c(c)(1). The ALJ's reference to the state agency consultants' reliance on the consultative examination appears to be an analysis of this factor. However, the ALJ provides no explanation for why she believes this reliance shows a lack of support for the consultants' ultimate findings. Plaintiff reads the ALJ's opinion as faulting the consultants for relying on the November 2022 consultative examination because it was outdated. Dkt. 17, at 10-11. This reading is admittedly reasonable given that the ALJ specifically pointed out that the examination was conducted "just a year after [Plaintiff's] cancer diagnosis." R. 27. However, the evidence cited by the ALJ as being inconsistent with the consultants' opinions all predates the consultative examination and the consultants' opinions and thus cannot support the conclusion that the examination or opinions were outdated. *See Baptist v. Kijakazi*, 74 F.4th 437, 443 (7th Cir. 2023) ("But when determining whether an opinion is outdated, the critical question is whether the new evidence contains 'significant and new developments' that 'reasonably' could have changed the previous reviewing consultant's assessment." (quoting *Moreno*, 882 F.3d at 728)). The Commissioner asserts that "the ALJ's point was that examination findings by treating providers did not document significant deficits, thus suggesting that the findings made by the consultative examiner in November 2022 did not represent [P]laintiff's long-term ability to function." Dkt. 22, at 12. But even with this interpretation, the evidence cited by the ALJ to address consistency is not such substantial evidence "as 'a reasonable mind might accept as adequate to support a conclusion'" that the state agency consultants' opinions were unpersuasive. *Swiecichowski*, 133 F.4th at 756 (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)).

---

[4] Because Plaintiff focuses her argument on the ALJ's evaluation of the medical consultants rather than the psychological consultants, the Court will do the same absent this brief note. The ALJ mentions that the state agency psychological consultants' opinions are unpersuasive "as they do not use agency terminology." R. 27. Although the ALJ may consider a medical source's "understanding of [the] disability program's policies," the Court is unaware of any requirement that consultants use particular terminology. 20 C.F.R. § 404.1520c(c)(5).

To address the consistency factor, which looks at how "consistent a medical opinion . . . is with the evidence from other medical and nonmedical sources," the ALJ cites several treatment records which are represented as showing grossly normal physical examinations. 20 C.F.R. § 404.1520c(c)(2). The first two record citations correspond to pain management appointments in March and April of 2022, at which Plaintiff complained of back, knee, groin, and shoulder pain. R. 616, 623. While records from both visits do reflect normal physical examinations, Plaintiff's physician presumably found Plaintiff's complaints at least somewhat credible given that she increased Plaintiff's gabapentin dosage at the first appointment and started Plaintiff on tizanidine at the second appointment. R. 621, 628. The ALJ also cited records from Plaintiff's January 2022 hospitalization when she was admitted with chest pain, abdominal pain, and shortness of breath. R. 822. Plaintiff's initial vitals were noted to be "quite abnormal," and Plaintiff was ultimately diagnosed with diabetes. *Id.* Although there were normal examination findings from this hospitalization, they were documented on the day of Plaintiff's discharge, when she was presumably at her most stable. R. 837-38. Finally, the ALJ referenced Plaintiff's January 2022 and June 2022 visits with her oncologist which did include some normal findings. R. 1003, 1090-91. However, Plaintiff was also noted to have elevated blood sugar levels at both appointments and hypothyroidism during her June 2022 visit. R. 1000, 1087. In fact, Plaintiff even had to delay her chemotherapy in January 2022 because of the adverse effects of her diabetes. R. 1087.

The ALJ's conclusion that the record shows grossly normal physical examinations "strikes [the Court] as impermissible cherry-picking—highlighting facts that support a finding of non-disability while ignoring evidence to the contrary." *Martin v. Saul*, 950 F.3d 369, 375 (7th Cir. 2020); *see also Cain v. Bisignano*, 148 F.4th 490, 497 (7th Cir. 2025) ("While minimal, this standard [for assessing medical opinions] requires the ALJ to confront the evidence that does not support his conclusion and explain why it was rejected." (internal quotation marks and citation omitted)). Most importantly, the ALJ did not explain what inconsistencies she believed there to be between the record evidence and the state agency consultants' opinions, nor did she explain her conclusion that the consultants' reliance on the consultative examination shows their opinions to be unsupported. Without such explanations, the Court cannot be assured that the ALJ "applied sound reasoning" to come to her conclusion about the persuasiveness of the state agency consultants' opinions. *Moy*, 142 F.4th at 552.[5]

3) Additional Issues

As both the ALJ's lack of explanation for the RFC determination and insufficient analysis of the state agency consultants' opinions require remand, the Court has no need to discuss

---

[5] Although not raised by Plaintiff, and ultimately not dispositive, the Court finds it appropriate to address one other aspect of the ALJ's medical opinion evaluation. In addition to the state agency consultants' opinions, the ALJ also found the opinion of Dr. Aulex unpersuasive. Because those were the only opinions that addressed Plaintiff's physical impairments, the ALJ was left with no opinions on which to rely to "determin[e] the significance of particular medical findings." *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018). This is not necessarily detrimental as "[a]n ALJ has 'final responsibility' for determining a claimant's RFC and need not adopt any one doctor's opinion." *Retzloff v. Colvin*, 673 Fed. App'x 561, 568 (7th Cir. 2016) (unpublished). But the Court cautions the ALJ to take extra care to avoid "straying beyond her expertise as an adjudicator and into the forbidden territory of playing doctor" if she again finds no opinion relating to Plaintiff's physical impairments persuasive on remand. *Mandrell*, 25 F.4th at 518 (citation modified).

Plaintiff's alternative arguments. Nonetheless, in the hopes of obviating the need for further appellate review, the Court will draw attention to a few additional issues in the ALJ's analysis.

Plaintiff argues that the ALJ failed to adequately consider Plaintiff's pain by ignoring (or failing to notice) evidence providing support for her allegations of pain. Dkt. 17, at 16. In assessing Plaintiff's medically determinable impairments, the ALJ noted that Plaintiff reported pain in her foot, back, and left shoulder but found there to be "no clinical and diagnostic evidence to support" these allegations. R. 21. Specifically, the ALJ explained that "[a]n x-ray of the left shoulder showed a normal appearing shoulder." *Id.* It is unclear why the ALJ believed a normal *shoulder* x-ray supported a finding that Plaintiff's foot and back pain were non-medically determinable. It is also unclear if the ALJ reached this conclusion after considering the evidence that would support foot and back pain (or any of the other areas of pain alleged by Plaintiff) – such as imaging "compatible with degenerative changes" in the left ankle and bilateral knees, a finding of decreased range of motion and tenderness in the lumbar back, and diagnoses for plantar fasciitis, medial tibial stress syndrome, peroneal tendinitis, and Achilles tendinitis – or if this evidence was simply overlooked. R. 545, 1500, 1507; *see also Thomas v. Colvin*, 826 F.3d 953, 959 (7th Cir. 2016) ("[W]ithout any analysis from the ALJ, there is no basis for drawing any conclusions about what evidence he considered or overlooked."). This "step two determination is a *de minimis* screening" in which an error does not require remand so long as the ALJ "fully explores the restrictions caused by" the impairment that the ALJ incorrectly determined to be non-medically determinable. *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697-98 (7th Cir. 2016) (citation modified). Nonetheless, the ALJ should be careful on remand "not [to] analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014).[6]

The ALJ's subjective symptom analysis also raises some flags. Based on Plaintiff's hearing testimony, her main complaints affecting her ability to work are nausea and fatigue. R. 48-49, 56. The ALJ seemed to understand this when she asked Plaintiff to confirm that her nausea would prevent her from maintaining on-task behavior. R. 53. Nonetheless, the ALJ found at step two that Plaintiff had no limitation in concentrating, persisting or maintaining pace with absolutely no mention of Plaintiff's alleged inability to concentrate due to nausea. R. 20. As explained above, an error at step two does not require remand but it certainly arouses suspicion that the ALJ neglected to address Plaintiff's primary complaint in this analysis.

When analyzing Plaintiff's subjective symptoms in the RFC analysis, the ALJ noted that Plaintiff's nausea may be the result of marijuana usage. R. 26. It is unclear what conclusion the ALJ drew from this, but Plaintiff is correct that if this statement was meant to be a comment on Plaintiff's general character, such reliance was improper. *See Donte A.R. v. Saul*, No. 19 C 2363, 2020 WL 7241066, at *9 (N.D. Ill. Dec. 9, 2020) ("In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness." (quoting *SSR 16-3p: Evaluation of Symptoms in Disability Claims*, 2017 WL 5180304, at *11 (Oct. 25, 2017))). If this statement was instead meant to simply draw attention to a side effect of Plaintiff's medical

---

[6] The Court additionally notes that, in most circumstances, pain is a symptom, not an impairment. *See* 20 C.F.R. § 404.1529. Thus, discussing pain by itself at step two is, at the very least, abnormal and can easily lead to an impermissible finding that a claimant's complaint of pain is incredible based solely on a lack of objective medical evidence. *See SSR 16-3p*, 2017 WL 5180304, at *5.

marijuana, this would provide support for Plaintiff's allegation of nausea. *See Arnold v. Saul*, 990 F.3d 1046, 1048 (7th Cir. 2021) ("An ALJ considers side effects from medication insofar as they 'limit a claimant's capacity for work." (quoting 20 C.F.R. § 404.1529(c))). The Commissioner suggests that the ALJ could discount Plaintiff's nausea allegations because, if they were true, Plaintiff would stop using marijuana to alleviate this side effect.[7] Dkt. 22, at 8. However, such a finding is beyond the ALJ's expertise as she cannot determine if the side effect of nausea outweighs the benefit to Plaintiff of using medically prescribed marijuana. *See Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009) (explaining that the ALJ cannot rely on "his own independent medical conclusion" about what treatment is or is not warranted); *Springer v. Colvin*, No. 03:14-cv-01450-HZ, 2015 WL 4876741, at *6 (D. Or. Aug. 12, 2015) (finding that the ALJ must accept "a side effect of a legally prescribed drug" such as marijuana).

The ALJ also found "no indication that side effects were the reason that [Plaintiff] declined increasing her Effexor, which appears to have actually helped with nausea." R. 26. The dosage and effectiveness of medication is undoubtedly a permissible factor to consider when evaluating Plaintiff's subjective complaints. *See* 20 C.F.R. § 404.1529(c)(3)(iv). However, the record does show that Plaintiff declined increasing her Effexor dosage and, as the ALJ recognized earlier in her opinion, Plaintiff testified that this was because "she did not want to be more tired." R. 23. Thus, there was *some* evidence to support this assertion "in the form of her own testimony." *Scott*, 647 F.3d at 741. The ALJ may find this statement incredible and can rely on the lack of documentation of this side effect in the medical record to make that finding (which may have been what this statement by the ALJ was meant to convey). *See Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005) ("[A] discrepancy between the degree of pain claimed by the applicant and that suggested by medical records is probative of exaggeration."). But the ALJ cannot, without explanation, find that there is *no* indication that side effects were the reason Plaintiff chose not to increase her Effexor dosage when Plaintiff testified to that effect. *See* 20 C.F.R. § 404.1529(c)(3) ("We will consider all of the evidence presented, including . . . your statements about your symptoms.").

In reference to Plaintiff's complaints of fatigue, the ALJ found that fatigue "is not prevalent in the record." R. 26. Again, the paucity of evidence showing Plaintiff complaining of fatigue to her medical providers is a valid reason to doubt the credibility of Plaintiff's testimony about the severity of her fatigue. *See Sienkiewicz*, 409 F.3d at 804. However, the ALJ also relied on Plaintiff's reported improvement with fatigue to show no "significant issues with fatigue." R. 26. But evidence of improvement, while important to consider, is not evidence of no significant issues. *See Jarnutowski*, 48 F.4th at 775. The Commissioner also suggests that Plaintiff would have sought alternative treatment if the side effect of fatigue was as limiting as alleged. Dkt. 22, at 7. However, such a conclusion goes beyond the ALJ's expertise because, as explained above, the ALJ cannot

---

[7] The Commissioner also suggests that the ALJ is permitted to ignore this side effect because Plaintiff was using medical marijuana for her appetite rather than pain. Dkt. 22, at 8. However, there is nothing to suggest that this was not a permissible use of this prescribed treatment. *Compare Riley v. Astrue*, No. C11-5318-TSZ-MAT, 2012 WL 628540, at *10 (W.D. Wash. Feb. 7, 2012), *R&R adopted*, 2012 WL 628593 (W.D. Wash. Feb. 24, 2012) (rejecting an ALJ's reliance on marijuana use to discredit plaintiff's allegations when he had authorization to use marijuana for medical purposes), *with Wood v. Colvin*, No. 16-CV-02150-MJW, 2017 WL 4161280, at *4 (D. Colo. Sept. 20, 2017) (upholding an ALJ's consideration of marijuana use as an addiction where plaintiff was using it for non-medical reasons).

weigh the benefits of Plaintiff's medications against the negative impact of the side effects.[8] The Seventh Circuit has also been skeptical of drawing a negative inference from a claimant's lack of complaints about side effects since "some patients may not complain because the benefits of a particular drug outweigh its side effects." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009).

The ALJ also explained that "[Plaintiff] does not appear to have even visited an oncologist after May 2023, which is just not consistent with debilitating limitations." R. 26. Frankly, this statement is completely nonsensical. Plaintiff was in remission as of March 2023, meaning there were no longer any signs of cancer. R. 1786; *Complete remission*, Attorneys' Dictionary of Medicine (Matthew Bender ed., 2025). It defies logic to suggest that Plaintiff's allegations of symptoms are unreliable because she stopped visiting her oncologist, a physician that specializes in cancer treatment, when her cancer was in remission. Nothing in the record suggests that Plaintiff's oncologist recommended continued follow-ups or that any other physician referred Plaintiff to her oncologist after she was in remission. Thus, it is not clear why Plaintiff's lack of visits with her oncologist are inconsistent with any of Plaintiff's allegations of symptoms.

## CONCLUSION

The ALJ's ultimate conclusion that Plaintiff is not disabled may have been correct here, though this Court is certainly not reaching that conclusion on the record before it. The ALJ did not provide this Court with the logical bridge necessary to make that determination, due to inaccurate citations of certain parts of the administrative record and incomplete analysis and articulation of her rationale. Because the Court cannot afford Plaintiff with the meaningful review to which she is entitled, Plaintiff's motion for reversal and remand is granted, and the Commissioner's motion is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this opinion. Plaintiff's counsel should raise any arguments not addressed herein with the ALJ on remand, both in a pre-hearing brief and at the administrative hearing. Failure to explicitly raise any such issues may result in a waiver if this case is again appealed to this Court.

Entered: March 5, 2025        By: _____

Michael F. Iasparro
United States Magistrate Judge

---

[8] This explanation also was not provided by the ALJ and thus constitutes an impermissible post-hoc rationalization of the ALJ's opinion. *See Zellweger v. Saul*, 984 F.3d 1251, 1254 (7th Cir. 2021) ("Chenery generally confines a reviewing court to the agency's actual rationale for its decision, not an after-the-fact justification.").